IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IYAD DAHER, M.D., § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-12-2705 |
| § | |
| MAHDI AL-BASSAM, M.D., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Pending in this case, in which the parties consented to proceed before the undersigned Magistrate Judge, is Defendant/Counter-Plaintiff Mahdi Al-Bassam, M.D.'s Motion for Summary Judgment (Document No. 35), in which Defendant seeks summary judgment on all of Plaintiff's claims, Defendant/Counter-Plaintiff Mahdi Al-Bassam's Motions for Summary Judgment on the Counterclaim for Payment of the Promissory Note (Document No. 36), and on the Counterclaims for Breach of Contract (Document No. 37), and Plaintiff Iyad Daher, M.D.'s Cross Motion for Summary Judgment (Document No. 46) on both his breach of contract claim and the breach of contract counterclaims. Having considered the motions for summary judgment, which encompass all of the claims and counter-claims in this case, the responses and additional briefing, the summary judgment evidence, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant/Counter-Plaintiff Mahdi Al-Bassam, M.D.'s Motion for Summary Judgment (Document No. 35) is GRANTED in PART and DENIED in PART, Defendant/Counter-Plaintiff Mahdi Al-Bassam's Motion for Summary Judgment on the Counterclaim for Payment of the Promissory Note (Document No. 36) is GRANTED, and all other motions (Document Nos. 37 & 46) are DENIED.

I.    **Background and Procedural History**

This case arises from the sale of Defendant Mahdi Al-Bassam, M.D.'s ("Al-Bassam") medical practice, Cardiovascular Medicine Associates, P.A. (referred to hereafter as "the practice"), to Plaintiff Iyad Daher, M.D. ("Daher"). That sale was accomplished with three documents: (1) a Stock Purchase Agreement; (2) a Promissory Note, and (3) a Security Agreement. The Stock Purchase Agreement, dated and executed on July 21, 2011, set forth the terms upon which Daher was to purchase all of the stock of the practice from Al-Bassam. One of those terms required Al-Bassam to continue to work in the practice for a period of six months. Another term required Daher to pay for the stock by executing a $150,000 Promissory Note. That Promissory Note, also signed and executed on July 1, 2011, required Daher to make five yearly installment payments of $30,000, beginning on July 1, 2012. A Security Agreement, also signed and executed on July 1, 2011, was to secure Daher's indebtedness under the Promissory Note.

Daher alleges in this case that amounts in patient accounts, which were characterized or labeled as "unapplied" and "deposit" accounts, were liabilities of the practice which were not disclosed by Al-Bassam as such at the time of the sale of the practice. Based on these allegations, Daher has asserted claims against Al-Bassam for: (1) breach of contract; (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), and (3) promissory estoppel. All three claims relate, in one way or another, to these allegations that Al-Bassam failed to disclose all the liabilities and/or contingent liabilities of the practice at the time of the sale. Al-Bassam, in response, has filed counterclaims for (1) breach of the promissory note; and (2) breach of contract. In support of those counterclaims, Al-Bassam alleges that Daher failed to make the payments due on the Promissory Note, as required by the terms of the Note, and failed to pay him the amounts due as accounts

receivable for the work he performed for the practice both before and after the final closing of the sale.

## II.     Arguments for Summary Judgment

In his Motion for Summary Judgment on Plaintiff's claims (Document No. 35), Al-Bassam argues, on both factual and legal grounds, that there were no undisclosed liabilities of the practice at the time of the sale.  In addition, Al-Bassam argues, on legal grounds that Daher cannot maintain a claim under the DTPA because Daher is not a consumer within the meaning of the DTPA, and that Daher cannot maintain a breach of contract or promissory estoppel claim because the patient accounts, including the patients' "unapplied" and "deposit" accounts, were known to Daher at the time of the sale of the practice.  With respect to his counterclaims and the Motions for Summary Judgment related thereto (Document Nos. 36 & 37), Al-Bassam argues that Daher is in breach of the terms of the Promissory Note, having failed to make timely payments thereunder, and has breached the terms of the Stock Purchase Agreement and the parties' subsequent agreement, by failing to pay Al-Bassam the amounts he was due for the services he provided to the practice both before and after the date of the final sale of the practice.

Daher, in response to those Motions for Summary Judgment and in support of his own Cross Motion for Summary Judgment, argues that the summary judgment evidence shows that the practice *did* have liabilities that Al-Bassam did not disclose, and that Al-Bassam's false representations as to the existence of liabilities constitutes a prior material breach of the Stock Purchase Agreement, which excuses his subsequent failure to perform thereunder and his subsequent failure to make timely payments on the Promissory Note.

III.    **Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden,[1] the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists that summary judgment should not be granted." *Id.*; *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

## IV. Discussion

Much of the evidence in this case is undisputed. That undisputed evidence shows that the sale of the practice was to be accomplished with three agreements, a Stock Purchase Agreement, a Promissory Note and a Security Agreement, with the sale being completed over a period of six months. All three agreements were signed on July 1, 2011. Under the terms of the Stock Purchase Agreement, Daher was to purchase, at two closings, all of the shares of the practice. His purchase of that stock was made by virtue of a $150,000 Promissory Note he delivered to Al-Bassam, which provided for five yearly payments of $30,000. The Promissory Note was secured by a Security Agreement, which granted Al-Bassam a security interest in all the practice's collateral, including its account receivables.

Al Bassam worked at the practice from July 1, 2011, to December 31, 2011. During that time, Daher had, through his business manager, access to and control over the practice's records and the practice's patient accounts. In early 2012, before the first payment on the Promissory Note was due, Daher questioned Al-Bassam about balances in patients' "unapplied" and "deposit" accounts. Al-Bassam responded that such balances were not liabilities of the practice under the cash-based accounting method he used for the practice prior to its sale. Daher disputed Al-Bassam's characterization of the account balances, and, on July 1, 2012, the date the first payment was due on the Promissory Note, Daher sent Al-Bassam a check in the amount of $11,609.09, which amount

reflected an offset of almost $19,000 for what Daher claims were undisclosed liabilities of the practice. Al-Bassam refused that check and disputed that any offset was warranted given that the unapplied and deposit accounts were not liabilities of the practice. Daher later, on July 27, 2012, sent Al-Bassam a check in the amount of $30,000. Al-Bassam refused that check and declared the Note to be in default. This lawsuit, filed by Daher in state court on August 7, 2012, and timely removed to this court on the basis of diversity, followed.

### A. Plaintiff's Claims

All of Plaintiff's claims are based, in one way or another, on Plaintiff's allegation that the account balances in patients' "unapplied" and "deposit" accounts are liabilities or potential liabilities of the practice. With respect to his breach of contract claim, Daher alleges that Al-Bassam breached the representations and warranties provisions of the Stock Purchase Agreement with his untrue representation that the practice did not have any outstanding liabilities. As for his DTPA claim, Daher alleges that he sought to acquire the practice, which included both goods and services, and that Al-Bassam "failed to disclose information about the practice," including the existence of undisclosed liabilities. Finally, in support of his promissory estoppel claim, Daher alleges that Al-Bassam promised him that the practice did not have any outstanding liabilities, which promise he relied on to his detriment.

#### 1. Breach of Contract

A breach of contract claim requires proof of: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American General Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010); *see also Valero Mktg. & Supply Co. v. Kalama*

*Int'l*, 51 S.W. 3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). No one disputes that the Stock Purchase Agreement constitutes a valid, binding contract. What is in dispute is whether Al-Bassam's representation in the Stock Purchase Agreement that the practice "had no direct or indirect indebtedness, liability, claim, loss or obligation, secured or unsecured, accrued, contingent or otherwise" that was not reflected on the unaudited financial statements, was accurate. The summary judgment evidence raises genuine issues of material fact as to whether Al-Bassam's representations were true, whether Daher, by completing the sale after having had access to the practices' records and patient accounts, waived any breach of the contract based on Al-Bassam's alleged misrepresentations,[2] and whether Daher has suffered any damages as a result thereof. Al-Bassam's Motion for Summary Judgment on Daher's breach of contract claim is DENIED.

  2.  **DTPA**

Daher cites two provisions of the DTPA in support of his DTPA claim, TEX. BUS. & COM. CODE §§ 17.46(b)(24), 1750(a)(2). Section 1746(b)(24) of the Texas Business and Commerce Code provides that it is a "false, misleading, or deceptive acts or practices" to "fail[ ] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." In addition, section 17.50(a)(2) provides that a consumer can maintain a claim under the DTPA for " breach of an express or implied warranty."

---

[2] As pointed out by Daher in his response and Cross Motion for Summary Judgment, Al-Bassam did not allege waiver as an affirmative defense in his responsive pleading. Nonetheless, the summary judgment evidence, given the timing of Daher's inquiries about the unapplied and deposit accounts and Al-Bassam's responses thereto, raises genuine issues of material fact on Al-Bassam's waiver defense.

Here, despite Al-Bassam's argument that Daher cannot prevail on his DTPA claims because there is no summary judgment evidence that he concealed any liabilities and no summary judgment evidence that he breached any express warranties, the summary judgment evidence does raise a genuine issue of material fact, as set forth above, as to whether Al-Bassam made a representation and/or warranted that the practice did not have any direct or indirect indebtedness "contingent or otherwise." As for Al-Bassam's argument that Daher cannot maintain a DTPA claim because he is not a consumer under the DTPA, and his argument that Daher's DTPA claims are nothing more than breach of contract claims, neither argument justifies summary judgment. While the DTPA does not cover the sale of intangibles, such as stock in a company, *see Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 496-97 (Tex. App-Houston [14th Dist.] 1994) (definition of "goods" under the DTPA does not include stock or securities), the Stock Purchase Agreement not only provided for the sale of stock, but the sale of the practice's "tangible personal property" as well. Such tangible personal property, in fact, was listed as collateral for Daher's Promissory Note. Given the mix of both tangibles and intangibles in the sale of the practice, Daher is not precluded from asserting a DTPA claim. *See Wheeler v. Box*, 671 SW2d 75, 78-79 (Tex. Civ. App. – Dallas 1984) (sale of business involved both sale of tangible and intangible assets and was subject to DTPA). Defendant Al-Bassam's Motion for Summary Judgment on Daher's DTPA claim is DENIED.

     **3.**     **Promissory Estoppel**

A promissory estoppel claim requires proof of "(1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee." *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 959 n.2 (Tex. App.–Houston [1st Dist.] 1995). "If a valid contract exists covering the alleged promise, a plaintiff cannot recover under promissory estoppel." *Lombana*

*v. AIG Am. Gen. Life Ins. Co.*, No. 01-12-00168-CV, 2014 WL 810858 * 8 (Tex. App.–Houston [1st Dist.] Feb. 27, 2014).

Here, the representations and/or "promise" at issue as to the existence of liabilities was contained in the Stock Purchase Agreement. Given that written agreement, the validity of which neither side has challenged, Daher cannot maintain a separate claim for promissory estoppel. Defendant Al-Bassam's Motion for Summary Judgment on Daher's promissory estoppel claim is GRANTED.

### B. Defendant's Counterclaims

Al-Bassam, in his First Amended Counterclaim, both sues to recover the amount due on the Promissory Note, and alleges claims for breach of contract. With respect to the Promissory Note, Al-Bassam argues that there is no genuine issue of material fact as to Daher's default thereon and his liability thereunder. As for the breach of contract claim, Al-Bassam maintains that the Stock Purchase Agreement required Daher to pay him for services he rendered to the practice between July 1, 2011, and December 31, 2011, and that Daher continues to owe him money for such services. In addition, Al-Bassam maintains that the parties subsequently agreed that Daher would bill for and collect for services Al-Bassam provided to the practice after January 1, 2012, but that Daher has not done so, and continues to owe Al-Bassam money for such services. Al-Bassam maintains that summary judgment is warranted on his breach of contract counterclaims because Daher has admitted he owes him money for his services both before and after January 1, 2012, and because he can establish the amount due for such services.

### 1. Promissory Note

"To prevail on a claim on a note, a plaintiff must prove the note in question, that the defendant signed the note, that the plaintiff is the legal owner and holder of the note, and that a certain balance is due and owing on the note." *TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.–Dallas 2010). Where each of these elements is established with uncontroverted summary judgment evidence, and where there is no evidence that raises a genuine issue of material fact on an affirmative defense asserted to the validity or enforceability of the note, summary judgment is warranted. *Griffin v. Citizens Nat. Bank in Waxahachie*, 557 S.W.2d 575 (Tex. Civ. App. – Ft. Worth 1977, writ dism'd); *FDIC v. Smith*, 981 F.2d 1255 *4 (5th Cir. 1992).

Here, each of the elements has been proved with uncontroverted summary judgment evidence. No one disputes the existence or validity of the Promissory Note at issue in this case; there is no dispute that Daher signed the Promissory Note; and there is no dispute that Al-Bassam is the owner and holder of the Promissory Note. While Daher attempts to dispute that he defaulted on the Promissory Note and argues that his obligations under the Promissory Note were excused by Al-Bassam's prior material breach of the Stock Purchase Agreement, neither argument raises a genuine issue of material fact as to the enforceability of the Promissory Note or the amount due and owing thereunder.

The Promissory Note, in the amount of $150,000, provided for five (5) yearly installment payments as follows:

> Five (5) successive annual payments of principal in the amount of $30,000 each, with the first installment payment due and payable on July 1, 2012, and each successive installment due and payable on the first day of July in each of the next four (4) successive years thereafter. As long as installment payments due hereunder are timely received by Payee, this promissory note ("Note") shall remain interest free.

(Document No. 36-1 at p. 17). The Promissory Note additionally provided for late charges:

> In the event any installment payment due hereunder shall become overdue for a period in excess of five (5) days, a charge of five percent (5%) for each installment so overdue may be charged by the holder hereof for the purposes of defraying expenses incident to handling such delinquent payments.

Finally, the Promissory Note gave the owner/holder of the Note the sole right to seek enforcement of the Note upon default:

> In the event of a default in the payment of any installment payment due hereunder . . . . the holder of this Note shall have the right and option to declare the unpaid balance and accrued interest on this Note at once due and payable and to foreclose or require foreclosure of any and all liens securing payment thereof . . .

The Promissory Note contains no provision which ties its performance to the terms of, or any performance due under, the Stock Purchase Agreement.

Here, the uncontroverted summary judgment evidence shows that the Promissory Note was signed by Daher on July 1, 2011. The uncontroverted summary judgment evidence also shows that Daher, the maker of the Note, did not make the $30,000 installment payment that was due on July 1, 2012. Finally, the uncontroverted summary judgment evidence shows, based on the terms of the Note itself and Al-Bassam's unilateral right to declare the entire amount of the Note due, which Al-Bassam did in a letter dated September 21, 2012 (Document No. 36-3), that Daher owes $150,000 on the Note, as the principal balance, plus 5% of that amount ($7500), as a late fee.

Because Al-Bassam has come forth with uncontroverted summary judgment evidence which establishes each of the elements of his claim on the Promissory Note, and because Al-Bassam had the right to seek enforcement of the Promissory Note without regard to any dispute between the parties as to the Stock Purchase Agreement, Defendant Al-Bassam's Motion for Summary Judgment on the Counterclaim for Payment of the Promissory Note (Document No. 36) is GRANTED and

Defendant Al-Bassam is entitled to recover on its Promissory Note claim the principal balance of $150,000, plus $7,500 in late fees, plus attorneys' fees, the amount of which shall be determined upon post-trial motions.

### 2. Breach of Contract

Al-Bassam, in support of his Motion for Summary Judgment on his breach of contract counterclaims (Document No. 37), has offered summary judgment evidence from both himself and from Daher that Daher owes him money for services he performed both before and after January 1, 2012. Daher, in response, does not dispute that he was to pay Al-Bassam for services Al-Bassam provided both before and after January 1, 2012. In addition, he does not dispute that he owes Al-Bassam some money for such services. Daher argues, instead, that Al-Bassam's prior material breach of the Stock Purchase Agreement excused his subsequent performance under that agreement and any related agreement.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 196 (Tex. 2004). Whether the prior breach is material is generally a question of fact for the jury. *Triton 88, L.P. v. Star Electricity, L.L.C.*, 411 S.W.3d 42, 58 (Tex. App.–Houston [1st Dist.] 2013).

Here, given the genuine issues of material fact on Plaintiff's breach of contract claim, and the timing of the alleged breach about which Plaintiff complains, summary judgment is not available on Al-Bassam's breach of contract counterclaims. Whether Al-Bassam breached the Stock Purchase Agreement, and whether such a breach, if any, was a prior *material* breach, are fact questions for the jury.

## V.     Conclusion and Order

Based on the foregoing, and the conclusions: (1) that genuine issues of material fact exist on the allegations underlying Plaintiff's claims that there were undisclosed liabilities "contingent or otherwise" at the time of the sale of the practice; (2) that Plaintiff cannot maintain a promissory estoppel claim given the existence of the parties' written agreements; and (3) that there is no genuine issue of material fact as to Plaintiff's default and liability on the Promissory Note, it is

ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's claims (Document No. 35) is GRANTED in PART and DENIED in PART, with summary judgment GRANTED in Defendant's favor on Plaintiff's promissory estoppel claim, and DENIED on Plaintiff's breach of contract and DTPA claims.  It is further

ORDERED that Defendant's Motion for Summary Judgment on its Counterclaim for Payment of the Promissory Note (Document No. 36) is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment on its Counterclaim for Breach of Contract (Document No. 37) and Plaintiff's Cross Motion for Summary Judgment on the Breach of Contract claim and counterclaim (Document No. 46) are both DENIED.

Signed at Houston, Texas, this ___2nd__ day of April, 2014.

_Frances H. Stacy_
Frances H. Stacy
United States Magistrate Judge